**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABU DHABI INVESTMENT AUTHORITY,<br><br>                Plaintiff,<br><br>        v.<br><br>MYLAN N.V. and MYLAN INC.,<br><br>                Defendants. | No. 1:20-cv-01342 (JPO) |

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' PARTIAL MOTION TO DISMISS

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants*

June 26, 2020

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ........................................................................................................ 2

    A.    Class Action and MLR Opt-Out ............................................................................ 2

    B.    This Action .............................................................................................................. 5

ARGUMENT ............................................................................................................................. 6

CONCLUSION .......................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ................................................................................................6, 7

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ...................................................................................................6

*Freihofer v. Vermont Country Foods, Inc.*,
    No. 2:17-cv-149, 2019 WL 2995949 (D. Vt. July 9, 2019) ...........................................8

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012) ...................................................................................8

*In re Bear Stearns Co., Inc. Sec., Deriv., and ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014) ............................................................................6

*In re Comverse Tech., Inc. Sec. Litig.*,
    543 F. Supp. 2d 134 (E.D.N.Y. 2008) ...........................................................................8

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
    128 F. Supp. 3d 792 (S.D.N.Y. 2015) ....................................................................7, 8, 9

*Plymouth Cty. Ret. Ass'n v. Schroeder*,
    576 F. Supp. 2d 360 (E.D.N.Y. 2008) ...........................................................................8

*Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) .............................................................................................7

*SRM Global Master Fund Ltd. P'ship. v. Bear Stearns Companies LLC*,
    829 F.3d 173 (2d Cir. 2016) .......................................................................................7, 8

**Statutes & Rules**

28 U.S.C. § 1658(b) ............................................................................................... *passim*

**PRELIMINARY STATEMENT**

Over the past four years, various plaintiffs—including a U.S. class of purchasers of Mylan common stock, an Israeli class of purchasers of Mylan common stock and an individual entity formed for the sole purpose of bringing a securities lawsuit on behalf of a hedge fund—have brought suit against Mylan N.V. and Mylan Inc. (collectively, "Mylan"), asserting claims under the federal securities laws based on allegations related to (1) Mylan's classification of EpiPen; (2) allegedly anticompetitive rebates paid to Pharmacy Benefit Managers ("PBMs"); and (3) alleged anticompetitive agreements related to certain of Mylan's generic drugs. Despite the fact that Plaintiff Abu Dhabi Investment Authority ("Plaintiff") has had access to these publicly filed allegations for several years, it chose to not bring suit in a timely fashion. Instead, Plaintiff waited until February 14, 2020 to copy and paste nearly all of the allegations from the Third Amended Class Action Complaint (the "TAC") in *In re Mylan N.V. Securities Litigation*, No. 1:16-cv-07926 (JPO) (S.D.N.Y.) (the "Class Action") into a new opt-out complaint against Mylan. In attempting to piggyback entirely on the Class Action, however, Plaintiff ignores that many of these claims—specifically, those based on alleged material misstatements or omissions prior to February 14, 2015—are now barred by the applicable five-year statute of repose and must be dismissed.[1]

---

[1] On June 17, 2020, the parties entered a Stipulation and Order, agreeing that a five-year statute of repose applies to Plaintiff's claims pursuant to 28 U.S.C. § 1658(b) and that claims related to allegedly false or misleading statements made on or after February 15, 2015 are not barred by the applicable statute of repose, but disagreeing as to whether claims related to allegedly false or misleading statements made prior to February 14, 2015 are barred by the applicable statute of repose. (ECF No. 23 (the "Stip. & Order") at 3.) The stipulation does not cover, and should not be construed to waive, any affirmative or other defenses open to Mylan, including the defenses asserted in Defendants' Answer to the Third Amended Class Action Complaint. (Class Action, ECF No. 144.)

**STATEMENT OF FACTS**

Mylan is a global pharmaceutical company whose subsidiaries develop, license, manufacture, market and distribute a variety of brand-name and generic products, including the EpiPen® Auto-Injector and EpiPen Jr® Auto-Injector (collectively, "EpiPen")—a life-saving epinephrine auto-injector used to treat people who experience severe allergic reactions—as well as hundreds of generic drugs.  (Compl. ¶ 2.)

### A.   Class Action and MLR Opt-Out

In October 2016, two putative classes of Mylan shareholders brought claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 against Mylan N.V., Mylan Inc. and certain current and former Mylan employees.[2]  These cases were consolidated, and on March 20, 2017, the plaintiffs ("Class Plaintiffs") filed a Consolidated Amended Class Action Complaint (the "Class Action Compl.").[3]  These claims were rooted in allegations related to (1) the Medicaid Drug Rebate Program ("MDRP") classification of EpiPen; (2) Mylan's EpiPen4Schools program; (3) a patent settlement between Pfizer and Teva; (4) the alleged price-fixing of Albuterol Sulfate, Benazepril, Clomipramine, Divalproex and Propranolol; and (5) the alleged market allocation of Doxy DR.  (*See generally* Class Action Compl.)  In their complaint, Class Plaintiffs relied on unproven allegations of regulatory and antitrust wrongdoing, hoping to capitalize on other proceedings that had nothing to do with Mylan's disclosures.  (*See* Class Action Compl. ¶ 14; *see also Connecticut v. Aurobindo Pharma*

---

[2] *Van Duppen v. Mylan N.V.*, No. 1:16-cv-07926 (S.D.N.Y. Oct. 11, 2016); *Perdue v. Mylan N.V.*, No. 1:16-cv-08000 (S.D.N.Y. Oct. 13, 2016).

[3] In addition to the Class Action pending before this Court, class action suits have been filed in Israel.  On October 13, 2016, Lior Friedman filed a complaint and petition for certification of a class action in Israel, which was later voluntarily dismissed.  File No. 18217-10-16 District Court (Tel Aviv-Jaffa), *Lior Friedman v. Mylan N.V.* (Oct. 13, 2016) (Isr.).  The Continuing Education Fund for Employees of the Israeli Electric Corporation ("IEC") also filed a complaint and petition for class certification on April 30, 2017 in Israel.  File No. 50981-04-17 District Court (Tel Aviv-Jaffa), *Continuing Educ. Fund for Emps. of the Israel Elec. Corp. Ltd. v. Mylan N.V.* (Apr. 30, 2017) (Isr.).  In April 2018, the Israeli Court stayed the IEC action pending a decision in the U.S. Class Action.

2

*USA, Inc.*, No. 3:16-cv-02056 (VLB) (ECF No. 1) (D. Conn. Dec. 15, 2016).)  Mylan moved to dismiss the case, and on March 28, 2018, this Court dismissed Class Plaintiffs' claims in part, allowing only the claims based on EpiPen classification and the alleged price-fixing of five generic drugs to proceed.  (Class Action ECF No. 69 "MTD Op. I".)

On July 6, 2018, Class Plaintiffs filed their Second Amended Class Action Complaint (the "SAC"), adding, among others, new allegations related to the alleged market allocation and/or price fixing of certain generic drugs (SAC ¶¶ 187-200) liberally cribbed from an amended complaint filed on June 18, 2018[4] by the Attorneys General of Connecticut and other states in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, No. 2:17-cv-03768 (CMR) (ECF No. 15) (E.D. Pa. Jun. 18, 2018) and regarding Mylan's rebates to PBMs for EpiPen products (SAC ¶¶ 98-114).  Mylan moved to dismiss in part, and on March 29, 2019, this Court dismissed the claims related to three additional generic drugs because Class Plaintiffs failed adequately to allege a conspiracy.  (Class Action ECF No. 102 "MTD Op. II" or "March 2019 Class Action Opinion".)

On May 10, 2019, the Attorneys General from several states filed another complaint against a number of pharmaceutical companies, including Mylan. *Connecticut v. Teva Pharm. USA, Inc.*, No. 3:19-cv-00710 (MPS) (ECF No. 1) (D. Conn. May 10, 2019) (the "May 2019 State AG Complaint").  Shortly thereafter, Class Plaintiffs amended their complaint yet again, once again copying and pasting allegations, this time from the May 2019 State AG Complaint.  Having copied numerous allegations from the May 2019 State AG Complaint, Class Plaintiffs averred in the TAC that Mylan engaged in anticompetitive conduct with respect to 39

---

[4] The Attorney General of Connecticut filed leave to amend its complaint on October 31, 2017.  *In re Generic Pharm. Pricing Antitrust Litig.*, No. 2:17-cv-03768 (CMR) (ECF No. 3) (E.D. Pa. Oct. 31, 2017).

3

drugs.[5]  (*See generally* TAC.)  The TAC included alleged material misstatements and/or omissions during an alleged class period beginning on February 21, 2012 and ending on May 24, 2019.  (*See generally id.*)

Mylan moved to dismiss the TAC in part, and on April 6, 2020, this Court dismissed the claims related to 18 additional generic drugs because Class Plaintiffs failed to sufficiently allege an unlawful market allocation or price-fixing agreement with respect to those drugs.  (Class Action ECF No. 140 "MTD Op. III".)  In addition, this Court certified a class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).[6]  Under the Court's decisions, Class Plaintiffs' allegations relating to (1) Mylan's MDRP classification of EpiPen; (2) Mylan's rebates to PBMs for EpiPen products; and (3) alleged price-fixing or market allocation of 21 drugs have been allowed to proceed.[7]

This Action is not the first opt-out related to the Class Action.  On February 26, 2019—nearly a year before Plaintiff filed this Action—MYL Litigation Recovery I LLC (the "MLR Plaintiff") filed suit against Mylan and certain of its current and former employees in *MYL Litigation Recovery I LLC v. Mylan N.V.*, No. 1:19-cv-01799 (JPO) (S.D.N.Y.) (the "MLR

---

[5] These 39 drugs were:  Doxycycline DR, Fenofibrate, Clonidine-TTS Patch, Tolterodine Extended Release, Capecitabine, Enalapril, Valsartan HCTZ, Albuterol Sulfate, Benazepril, Clomipramine, Divalproex, Propranolol, Amiloride HCL/HCTZ, Doxazosin Mesylate, Ketorolac, Loperamide HCL, Levothyroxine, Methotrexate, Nadolol, Tizanidine, Trifluoperazine HCL, Budesonide DR, Buspirone Hydrochloride, Cimetidine Tablets, Diclofenac Potassium, Diltiazem HCL, Estradiol, Fluoxetine HCL, Flurbiprofen, Fluvastatin Sodium, Haloperidol, Ketoconazole, Ketoprofen, Nitrofurantoin MAC capsules, Pentoxifylline, Prazosin HCL, Prochlorperazine, Tamoxifen Citrate and Tolmetin Sodium.

[6] The class is defined as follows:  "All persons or entities that purchased Mylan N.V. and/or Mylan N.V.'s predecessor, Mylan Inc., common stock between February 21, 2012 and May 24, 2019, both dates inclusive (the 'Class Period'), excluding Defendants, current and former officers and directors of Mylan, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest."  (MTD Op. III at 14.)

[7] These 21 drugs are:  Doxy DR, Albuterol Sulfate, Benazepril, Clomipramine, Divalproex, Propranolol, Fenofibrate, Clonidine TTS Patch, Tolterodine ER, Capecitabine, Valsartan HCTZ, Amiloride HCL/HCTZ, Doxazosin Mesylate, Ketorolac, Loperamide HCL, Levothyroxine, Methotrexate, Trifluoperazine, Nadolol, Tizanidine and Ketoprofen.

4

Litigation"), asserting the same causes of action as in the SAC related to allegedly false or misleading statements concerning EpiPen. The complaint in the MLR Litigation draws heavily from the allegations in the SAC. (*See generally MYL Litig. Recovery I LLC v. Mylan N.V.*, No. 1:19-cv-01799 (JPO) (MLR Litigation ECF No. 1) (S.D.N.Y. Feb. 26, 2019) (the "MLR Complaint").) For the MLR Plaintiff, the five-year repose cutoff was February 26, 2014 (the "MLR Repose Cutoff"). Notably, although the MLR Plaintiff likewise poached its allegations from the relevant Class Action Complaint, it did not include any alleged material misstatements or omissions alleged in the Class Action Complaint predating the MLR Repose Cutoff. Mylan moved to dismiss the MLR Complaint in part, and on March 30, 2020, this Court dismissed, among others, certain Sections 10(b) and 20(a) claims relating to alleged anticompetitive conduct; the effectiveness of Mylan's internal disclosure controls; regulatory risk concerning Mylan's 2013 annual report; and individual defendant Rajiv Malik. (MLR Litigation ECF No. 39 "MLR MTD Op.".) An amended complaint was filed on May 6, 2020.

### B. This Action

On February 14, 2020, Plaintiff filed the instant action, copying and pasting nearly all[8] of the allegations from the TAC and asserting claims under Section 10(b) and Rule 10b-5 against Mylan Inc. and Mylan N.V. (*Compare* Compl., *with* TAC.) Unlike the Class Plaintiffs, Plaintiff here did not assert claims against any individual defendants and, accordingly, did not assert claims under Section 20(a). (*See* Compl. ¶¶ 594-602.) Pursuant to a Stipulation and Order entered by the Court on June 17, 2020, this Court's prior opinions on all three motions to dismiss the Class Action apply in this Action "with equal force as if such Opinions had been

---

[8] The only substantive differences between this Abu Dhabi Complaint and the TAC are that the complaints sometimes allege different data for purported price increases of certain generic drugs, and the Abu Dhabi Complaint does not name any individual defendants whereas the TAC does.

issued in this Action", with one exception.  (Stip. & Order ¶ 1.)  The Stipulation and Order provides that this Court's ruling in its March 2019 Class Action Opinion dismissing certain claims as barred by the statute of repose[9] does not apply in this action.[10]  (Stip. & Order ¶ 1 (citing MTD Op. II).)  The Stipulation and Order further provides that Defendants shall file the instant motion, limited to the issue of whether certain of Plaintiff's claims in this Action are barred by the applicable statute of repose.  (Stip. & Order ¶ 2.)

## ARGUMENT

The Complaint in this Action alleges that Defendants made a series of false and/or misleading statements from February 2012 to May 2019 (all of the alleged false and/or misleading statements alleged in the TAC).  Because roughly half of the statements were allegedly made more than five years before the Complaint was filed (*see* Compl. ¶¶ 412-57), they are barred by the Exchange Act's statute of repose, and claims based on these allegations should be dismissed.

The statute of repose applicable to Section 10(b) and Rule 10b-5 provides that a private plaintiff may not bring a cause of action under these provisions more than "5 years after [the alleged] violation".  28 U.S.C. § 1658(b)(2); s*ee also In re Bear Stearns Co., Inc. Sec., Deriv., and ERISA Litig.*, 995 F. Supp. 2d 291, 299 (S.D.N.Y. 2014) ("Private Actions under Section 10(b) of the Exchange Act are subject to a . . . five-year statute of repose.").  The Supreme Court has held that the "statute of repose . . . begin[s] to run on the date of the last culpable act or omission of the defendant".  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 n.1 (2018) (alteration in original) (quoting *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S.

---

[9] Class Plaintiffs did not oppose such arguments.

[10] Stip. & Order ¶ 1 ("[N]othing in this Stipulation and Order shall be construed as an agreement that the Court's ruling in the March 2019 Opinion granting defendants' unopposed motion to dismiss certain claims as barred by the statute of repose will apply in this Action.").

Ct. 2042, 2045 (2017)).  Unlike the applicable statute of limitations, which is "designed to encourage plaintiffs to pursue diligent prosecution of known claims", it is axiomatic that statutes of repose are designed to "effect [the] legislative judgment that a defendant should be free from liability after the legislatively determined period of time".  *Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. at 2049 (internal quotation marks and citations omitted).

Unlike a statute of limitations, a statute of repose cannot be equitably tolled for any reason, as any extension would constitute the "abridge[ment], enlarge[ment] or modif[ication] of a substantive right—specifically, the right of defendants to be free from suit post the repose period . . . .".  *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 804 (S.D.N.Y. 2015) (alterations in original) (quoting *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013)).  Indeed, the Supreme Court has confirmed that the *American Pipe* tolling doctrine, which tolls statutes of limitations when there is a putative class action pending, does not toll statutes of repose.  *Cal. Pub. Emps.' Ret. Sys.*, 137 S. Ct. 2042 at 2045, 2051 ("The purpose and effect of a statute of repose . . . is to *override* customary tolling rules arising from the equitable powers of courts.") (emphasis added); *see also SRM Global Master Fund Ltd. P'ship. v. Bear Stearns Cos. LLC*, 829 F.3d 173, 177 (2d Cir. 2016) (holding that *American Pipe* tolling does not apply under the Exchange Act's five-year statute of repose because "[f]irst, as a statute of repose, § 1658(b)(2) is not subject to equitable tolling; and second, it creates a *substantive* right in defendants to be free from liability after five years—a right that *American Pipe* tolling cannot modify. . . .") (emphasis in original) (internal citations omitted).

Despite clear authority—including from the United States Supreme Court—holding that statutes of repose may not be tolled,[11] Plaintiff has taken the position that its claims are not time-barred. However, any argument that the continuing violations doctrine tolls or extends the statute of repose is misplaced and contrary to the weight of authority in this Circuit, which is "critical of using a continuing violations theory to sidestep the five-year repose period". *Freihofer v. Vermont Country Foods, Inc.*, No. 2:17-cv-149, 2019 WL 2995949, at *3 (D. Vt. July 9, 2019) (analyzing decisions from courts in this Circuit). Indeed, courts in the Southern District of New York have rejected the continuing violations doctrine in the context of lawsuits arising under Section 10(b) of the Exchange Act, reasoning that, "[s]ince even one misstatement can give rise to a 'violation' . . . the expansion of 'violation' to include a series of misstatements and omissions would almost certainly require the operation of equitable considerations—the kind foreclosed by the [Second Circuit] in *IndyMac* with respect to statutes of repose." *Kuwait Inv. Office*, 128 F. Supp. 3d at 807 (S.D.N.Y. 2015) (holding that the "application of the continuing violations doctrine to delay the commencement of the statute of repose . . . is inconsistent with the substantive right to repose after five years granted by [the statute]").

Cases to the contrary[12] predate—and have been superseded by—the Second Circuit's 2013 decision in *IndyMac*, which held that equitable tolling does not apply to the Securities Act's statute of repose, and which the Second Circuit has extended to the Exchange Act's statute of repose. *SRM Global Master Fund*, 829 F.3d at 177 ("For the reasons we provided in *IndyMac*, we hold that *American Pipe* tolling does not apply to § 1658(b)(2)'s five-

---

[11] The MLR Plaintiff also implicitly acknowledged this to be the case when it declined to bring claims on alleged material misstatements or omissions predating the MLR Repose Cutoff.

[12] *See, e.g.*, *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 324 (S.D.N.Y. 2012); *Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 378 (E.D.N.Y. 2008); *In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134, 155 (E.D.N.Y. 2008) (declining to dismiss on statute of repose grounds but noting that "[t]he weight of authority in this circuit is skeptical of the application of the continuing violations doctrine in securities fraud cases.").

8

year statute of repose."); *see also Kuwait Inv. Office*, 128 F. Supp. at 807-08 (dismissing claims based on alleged misstatements and/or omissions predating the repose cutoff, "especially in light of *IndyMac's* strict construction and application of the statute of repose"). The language of the Exchange Act and black letter law make clear that Plaintiff's claims based on allegedly material false or misleading misstatements or omissions prior to February 14, 2015 should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint to the extent Plaintiff's claims are based on allegedly false and misleading statements dated February 21, 2012; April 26, 2012; April 27, 2012; July 26, 2012; October 25, 2012; February 27, 2013; February 28, 2013; May 2, 2013; August 1, 2013; October 31, 2013; February 27, 2014; May 1, 2014; August 7, 2014; and October 30, 2014. (Compl. ¶¶ 412-457.)

June 26, 2020

                          Respectfully submitted,

                          CRAVATH, SWAINE & MOORE LLP,

                by

                             */s/ David R. Marriott*
                                David R. Marriott
                                Kevin J. Orsini
                                Rory A. Leraris
                               Members of the Firm

              Worldwide Plaza
                 825 Eighth Avenue
                   New York, NY 10019
                     (212) 474-1000
                          dmarriott@cravath.com
                          korsini@cravath.com
                          rleraris@cravath.com

           *Attorneys for Defendants*