UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABU DHABI INVESTMENT AUTHORITY, | Civil Action No. 1:20-cv-01342-JPO |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS |
| vs. | |
| MYLAN N.V. and MYLAN INC., | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ...............................................................................................2

    A.    The Complaint Alleges that Defendants Made a Continuing Series of Related Misrepresentations Throughout the Relevant Period ................................2

III. ARGUMENT .........................................................................................................................5

    A.    None of Plaintiff's Exchange Act Claims Are Time-Barred by 28 U.S.C. §1658(b)(2)'s Five-Year Statute of Repose ................................................................5

IV. CONCLUSION ....................................................................................................................11

## TABLE OF AUTHORITIES

Page

**CASES**

*Borden, Inc. v. Spoor Behrins Campbell & Young*,
   778 F. Supp. 695 (S.D.N.Y. 1991) .................................................................................. 7

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) ........................................................................................................ 5, 6

*Freihofer v. Vermont Country Foods, Inc.*,
   No. 2:17-cv-149, 2019 WL 2995949
   (D. Vt. July 9, 2019) ..................................................................................................... 10

*Gotham Holdings, LP v. Health Grades, Inc.*,
   534 F. Supp. 2d 442 (S.D.N.Y. 2008) ............................................................................ 9

*Hawkins v. Steingut*,
   829 F.2d 317 (2d Cir. 1987) ......................................................................................... 10

*In re Beacon Assocs. Litig.*,
   282 F.R.D. 315 (S.D.N.Y. 2012) .................................................................................... 7

*In re Dynex Capital, Inc. Sec. Litig.*,
   No. 05 Civ. 1897 (HB), 2006 WL 314524
   (S.D.N.Y. Feb. 10, 2006), *vacated in part on other
   grounds sub nom. Teamsters Local 445 Freight Div.
   Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 1990) ............................ 7, 8

*In re Exxon Mobil Corp. Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007) ........................................................................................... 7

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*,
   924 F. Supp. 2d 528 (S.D.N.Y. 2013) ............................................................................ 6

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
   128 F. Supp. 3d 792 (S.D.N.Y. 2015) .......................................................................... 10

*McCann v. Hy-Vee, Inc.*,
   663 F.3d 926 (7th Cir. 2011) .......................................................................................... 7

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ........................................................................................................ 6

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) .................................................................................... 6, 8, 9

**Page**

*Plymouth Cty. Ret. Ass'n v. Schroeder*,
  576 F. Supp. 2d 360 (E.D.N.Y. 2008) ........................................................................... 6, 9

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013) ........................................................................................... 9, 10

*Ret. Sys. v. ANZ Sec., Inc.*,
  __ U.S. __, 137 S. Ct. 2042 (2017) ............................................................................. 1, 5, 6

*SRM Glob. Master Fund L.P. v. Bear Stearns Cos.*,
  829 F.3d 173 (2d Cir. 2016) ............................................................................................. 9

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  No. 05 Civ. 1898 (SAS), 2005 WL 2148919
  (S.D.N.Y. Sept. 6, 2005) ................................................................................................... 7

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §77k .................................................................................................................................. 9
  §77l ................................................................................................................................ 8, 9
  §77m ................................................................................................................................. 9

28 U.S.C.
  §1658 ................................................................................................................................ 1
  §1658(b) ........................................................................................................................... 6
  §1658(b)(1) ...................................................................................................................... 6
  §1658(b)(2) ............................................................................................................. *passim*

17 C.F.R.
  §210.10b-5 ..................................................................................................................... 6, 8

## I.      INTRODUCTION

The issue before the Court is not whether *American Pipe* tolling applies to the five-year statute of repose in 28 U.S.C. §1658. Nor does the issue concern the Class Action – *In re Mylan N.V. Sec. Litig.*, No. 1:16-cv-07926-JPO – or the MYL Litigation Recovery case – *MYL Litig. Recovery I LLC v. Mylan N.V.*, No. 1:19-cv-01799-JPO.[1] Framed properly, defendants Mylan N.V. and Mylan Inc.'s (together, "Mylan," the "Company" or "Defendants") partial motion to dismiss raises only one issue: what constitutes a "violation" for 28 U.S.C. §1658(b)(2) purposes? Despite Defendants' claims to the contrary, the weight of authority in this Circuit holds that the "violation" that triggers §1658(b)(2)'s five-year statute of repose is the date on which the last alleged misrepresentation or omission was made. The Supreme Court has similarly instructed that the statute of repose is measured from the "'date of the [defendant's] last culpable act or omission.'" *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, __ U.S. __, 137 S. Ct. 2042, 2045 (2017) ("*ANZ*").[2] Thus, in cases like this one, where the defendants made a series of misrepresentations in furtherance of a fraudulent scheme, courts in this District hold that the statute of repose does not begin to run until the last actionable false statement is made. As plaintiff Abu Dhabi Investment Authority ("Plaintiff") alleges a fraud consisting of misrepresentations and omissions that continued unabated for over seven years and the Complaint for Violations of the Federal Securities Laws ("Complaint")

---

[1]    Curiously, Defendants' nine-page Memorandum of Law in Support of Defendants' Partial Motion to Dismiss ("Defs.' Mem.") (ECF No. 25) devotes six pages to discussing the procedural history of the Class Action. Defs.' Mem. at 1-6. But, as discussed *infra* §III.A., how the Class Action allegedly formed its allegations is irrelevant to the matter at hand. Additionally, plaintiffs in the Class Action did not oppose defendants' motion to dismiss statements made by individual defendant Malik made before July 2012, so the Court did not address this issue in its March 29, 2019 opinion. Class Action ECF No. 102 at 19.

[2]    Citations are omitted and emphasis is added unless otherwise indicated.

- 1 -

(ECF No. 1) was filed within five years of the last alleged misrepresentations, Plaintiff's claims are timely.

Instead of tackling the host of decisions from this Circuit supporting the timeliness of Plaintiff's claims, Defendants brazenly contend that "clear authority" and "black letter law" supports dismissal of nearly half of the false and misleading statements alleged in the Complaint. Defs.' Mem. at 8-9. But this is simply not the state of the law in this Circuit and Defendants' attempt to manufacture Second Circuit precedent on the issue is unfounded. Accordingly, as Defendants miscalculate the start date of the five-year repose period in 28 U.S.C. §1658(b)(2), the motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

### A.   The Complaint Alleges that Defendants Made a Continuing Series of Related Misrepresentations Throughout the Relevant Period[3]

This action is predicated on the concealment of an ongoing and continuing fraudulent scheme whereby Defendants repeatedly misled investors and engaged in illegal price manipulation and anticompetitive activities in violation of the Securities Exchange Act of 1934 ("Exchange Act"). *See generally* Complaint. The Complaint specifically centers around three sets of activities that form the basis of the claims related to Mylan's allegedly false and misleading statements throughout the Relevant Period. First, Mylan knowingly misclassified the EpiPen as a generic drug so it could cheat Medicaid out of its rightful rebates for EpiPen purchases. ¶¶38-69, 78-82. After the Centers for Medicare & Medicaid Services informed Mylan of what it already knew, that EpiPen was incorrectly classified, Mylan continued to misrepresent to investors the legal situation and investigations it faced as a result of its egregious misclassification. ¶¶70, 77, 83-87. Second, Mylan

---

[3] The "Relevant Period" in this action is February 21, 2012 through May 24, 2019, both dates inclusive. ¶1. (Paragraph references ("¶_" and "¶¶_") are to the Complaint.)

- 2 -

engaged in anticompetitive conduct that included entering into exclusive arrangements with commercial insurance companies and pharmaceutical benefit managers in order to prevent competition for its EpiPen. ¶¶97-113. As a result of this conduct, Mylan successfully blocked its competitor from accessing 50% of the U.S. market for epinephrine auto-injectors. *Id.* Finally, beginning in 2012 until the end of the Relevant Period, Mylan entered into anticompetitive agreements with its competitors to allocate the market and fix the prices of virtually every generic drug it sold by agreeing with competitors to raise the prices of the drugs substantially and simultaneously. ¶¶114-411. This wide-ranging scheme allowed Mylan to inflate the prices of these often life-saving drugs exponentially and by over 1000% in some cases. *Id.*

As alleged in the Complaint, Defendants' fraud consists of a continuing series of related misrepresentations in, and omissions from, U.S. Securities and Exchange Commission ("SEC") filings, press releases, and other public documents. On February 21, 2012, Mylan issued its first false and misleading statement during the Relevant Period starting the Company's fraud. In its Annual Report on Form 10-K for the year ended December 31, 2011, Mylan failed to disclose that its net income of $129.49 million, revenue of $1.53 billion, gross profit of $2.56 billion, and gross margins of 41.8% were achieved in significant part because Mylan knowingly misclassified the EpiPen so it could overcharge Medicaid for its EpiPen purchases. ¶¶412-414. Defendants issued similar false and misleading financial and operating results for the rest of the year. ¶¶423, 427. Additionally, in the same Form 10-K, and in several other 2012 SEC filings, Mylan also represented that: "Our reporting and payment obligations under the Medicare and/or Medicaid rebate program and other governmental purchasing and rebate programs are complex and may involve subjective decisions that could change as a result of new business circumstances, new regulatory guidance, or advice of legal counsel." ¶¶417, 421, 425. However, Plaintiff alleges that the classification of

EpiPen was not complex, was not subject to differing interpretations, and government authorities had already determined that EpiPen was misclassified and informed Mylan of this determination. ¶¶417-418.

Defendants' fraud continued throughout 2013. As in its 2012 Form 10-K, Mylan's February 27, 2013 Form 8-K and various press releases issued throughout the year misleadingly represented the Company's financial and operating results – failing to disclose the Company's misclassification of the EpiPen and its anticompetitive conduct. ¶¶429-430, 437-442. Also in February 2013, Defendants continued to misrepresent the reporting and payment obligations under the Medicare rebate program as "complex" and "involv[ing] subjective decisions." ¶¶435-436. Then in its February 28, 2013 10-K, Mylan characterized the U.S. pharmaceutical industry as "very competitive" and that "[t]he primary means of competition [were] innovation and development, timely FDA approval, manufacturing capabilities, product quality, marketing, portfolio offering size, customer service, reputation and price." ¶433. These characterizations were misleading as Mylan failed to disclose that it was engaged in anticompetitive and collusive conduct to eliminate competitors for its EpiPen and anticompetitive activities to allocate and fix the markets for nearly every generic drug it sold. ¶434. As a result of its participation in this "price-fixing cartel," the markets for generic drugs sold by Mylan were not competitive – unbeknownst to investors and the public. *Id.*

Defendants continued to issue related false and misleading statements in 2014. ¶¶443-457. In a February 27, 2014 Form 8-K, Defendants announced financial and operating results that again failed to disclose that Mylan was knowingly misclassifying the EpiPen and had engaged in anticompetitive conduct to exclude EpiPen competitors. ¶¶444-445. That same month, in the Company's Form 10-K, Mylan again portrayed that its competitors competed with it based on

- 4 -

"clinical characteristics and benefits," that the U.S. pharmaceutical industry remained "very competitive," and that the U.S. pharmaceutical marketplace was "highly sensitive to price." ¶448. But, yet again, Defendants omitted any mention of the anticompetitive conduct it was engaged in with other drug companies – conduct that eliminated competition in the generic drug marketplace and allowed them to control the prices of the generic drugs they sold. ¶¶444-446, 448-449, 452-457.

Defendants' false and misleading statements continued unabated for the next six years – well past the February 14, 2015 cutoff Defendants seek in their motion to dismiss. ¶¶443-526. As detailed in the Complaint, throughout 2015 and until 2019, Mylan continued to issue false and misleading statements concerning: (1) its knowing misclassification of the EpiPen, ¶¶458-461, 464-473, 476-481, with the last related false statement issued on November 9, 2016, ¶¶503-504; (2) its anticompetitive conduct to prevent competition for the EpiPen, ¶¶458-459, 462-463, 466-469, 472-473, 476-480, with the last related false statement issued on November 9, 2016, ¶¶503-504; and (3) its anticompetitive agreements to allocate the market for, and fix the prices of, the generic drugs it sold, ¶¶458-459, 462-463, 466-469, 472-481, with the last related false statement issued on May 7, 2019, ¶533.

Altogether and as alleged in the Complaint, Defendants' fraud consists of an ongoing and continuing series of related misrepresentations in, and omissions from, SEC filings, press releases, and public conference calls. On February 14, 2020, less than a year after the last related misrepresentation was made, Plaintiff filed this securities class action. ECF No. 1.

### III. ARGUMENT

#### A. None of Plaintiff's Exchange Act Claims Are Time-Barred by 28 U.S.C. §1658(b)(2)'s Five-Year Statute of Repose

Consistent with the Supreme Court opinions in *ANZ* and *CTS Corp. v. Waldburger*, 573 U.S. 1 (2014), the weight of the authority in this Circuit holds that the violation that triggers 28 U.S.C.

§1658(b)(2)'s five-year statute of repose is the date of the defendants' last alleged misrepresentation or omission. Here, Plaintiff alleges that Defendants' last false and misleading statements regarding the three factually intertwined frauds were issued well after February 14, 2015. ¶¶503-504, 533. As Plaintiff's initial Complaint was filed on February 14, 2020, within the five-year repose period, none of Plaintiff's securities fraud claims are time-barred.

Private securities-fraud cases under Rule 10b-5 are governed by 28 U.S.C. §1658(b), which provides that a 10b-5 claim "may be brought not later than the earlier of . . . (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." Section 1658(b)(1) is a statute of limitations and the five-year period defined in §1658(b)(2) is regarded as a statute of repose. *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010). The Second Circuit has emphasized that the statute of repose "begins to run without interruption once the necessary ***triggering event*** has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action." *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004). Defendants do not challenge the timeliness of Plaintiff's claims under §1658(b)(1). *See generally* Defs.' Mem. Thus, the only issue before the Court is what constitutes a "violation" or "triggering event" for §1658(b)(2) purposes.

Twice the Supreme Court has explained that statutes of repose "begin to run on 'the date of the ***last culpable act or omission*** of the defendant.'" *ANZ*, 137 S. Ct. at 2045; *CTS*, 573 U.S. at 8. Consistent with the Supreme Court's instruction, the lion's share of district courts in this Circuit to consider the issue of what constitutes a violation for §1658(b)(2) purposes have similarly held that the five-year period begins to run on the date of the "last alleged misrepresentation or omission." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*, 924 F. Supp. 2d 528, 536 (S.D.N.Y. 2013); *Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 378 (E.D.N.Y. 2008)

- 6 -

("With respect to the plaintiff's claims based on false and misleading public disclosures and financial statements, the weight of authority, including in this Circuit, dictates that the five year statute of repose first runs from the date of the last alleged misrepresentation regarding related subject matter."); *Borden, Inc. v. Spoor Behrins Campbell & Young*, 778 F. Supp. 695, 699 (S.D.N.Y. 1991); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 324-25 (S.D.N.Y. 2012); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 WL 314524, at *5 (S.D.N.Y. Feb. 10, 2006), *vacated in part on other grounds sub nom. Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190 (2d Cir. 1990).[4]

Especially in cases like this one, where the fraud consists of a series of misstatements and omissions, district courts have found that measuring the five-year period from the date a defendant's fraud ends accords with the statute's text and the Supreme Court's explanation of how a statute of repose operates. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS), 2005 WL 2148919, at *11 (S.D.N.Y. Sept. 6, 2005) ("In light of Bombardier's reiteration of the alleged misstatements, it does not serve the purpose of a statute of repose to grant immunity to these defendants, who continued their wrongful conduct beyond the time specified by the repose period.");[5] *Beacon*, 282 F.R.D. at 324-25 (finding that the defendant was "under a

---

[4] The Third and Seventh Circuits have also addressed this issue and concur that the five-year period runs from the date of the last alleged securities violation. *See, e.g.*, *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200-01 (3d Cir. 2007); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930-32 (7th Cir. 2011).

[5] Judge Calabresi of the Second Circuit similarly observed:

> Giving repose to a defendant who has ceased to do wrong may well be worthwhile even if it is "unfair" to a plaintiff whose cause of action has not yet accrued. But it is a different thing altogether to give repose to a defendant who continued his wrongful conduct, perhaps even beyond the time specified by the repose period.

'continuing duty to disclose its true concerns [about Madoff]'" and "[t]hese continuing misrepresentations mean that Plaintiffs' claims are not untimely, given the rule, adopted by the majority of courts in this Circuit, that the statute of repose 'first runs from the date of the last alleged misrepresentation regarding related subject matter'").

*Dynex* is particularly on point. There, the defendants argued that the five-year statute of repose barred the plaintiffs' claims based on statements or omissions contained in bond offering documents issued in 1999. 2006 WL 314524, at *4. Judge Baer rejected that argument, holding that §1658(b)(2) requires "securities fraud claims to be brought within five years of the occurrence of the violation" and "[i]n a case like this one, in which ***a series of fraudulent misrepresentations is alleged***, this 'period of repose begins when the last alleged misrepresentation was made.'" *Id.* at *5. Based on this, the court found the plaintiffs' claims regarding earlier-filed documents timely because "the misrepresentations contained in the offering documents were followed by additional materially false statements regarding the same subject matter." *Id.*

Here, Plaintiff alleges that beginning in 2012, Defendants began issuing a series of misrepresentations and omissions in various SEC filings and public documents. *See generally* Complaint. These false statements were then followed by additional false and misleading statements regarding the same subject matter, which continued until May 2019. In these circumstances, courts have held that defendants should be held liable for their entire fraudulent scheme, especially when their fraud spans over several years. Indeed, in Rule 10b-5 cases like this one, where the very nature of the fraud involves misstatements and omissions that are consistent, on-going, and continuous, elimination of part of the case based on the statute of repose would create a potentially anomalous

---

*P. Stolz*, 355 F.3d at 107 (Calabresi, J., concurring) (holding that the statute of repose period for §12 claims under the Securities Act of 1933 ("Securities Act") began when the unregistered security was first bona fide offered to the public, not when the last bona fide offer was made).

outcome – punishing the plaintiff for filing their claim at the cessation of a defendant's illegal conduct. *See P. Stolz*, 355 F.3d at 107. Accordingly, as Plaintiff alleges a succession of related misstatements and omissions in furtherance of Defendants' fraudulent scheme, its claim brought in February of 2020 is timely. *See Plymouth Cty.*, 576 F. Supp. 2d at 376-78.

The four cases Defendants cite in an attempt to foster the appearance of contrary Second Circuit precedent miss the mark. First, Defendants rely on *SRM Glob. Master Fund L.P. v. Bear Stearns Cos.*, 829 F.3d 173 (2d Cir. 2016), for its holding that "'*American Pipe* tolling does not apply to §1658(b)(2)'s five-year statute of repose.'" Defs.' Mem. at 8-9. But Plaintiff does not claim nor did it ever represent to Defendants during the pre-motion meet-and-confer process that it believed its claims were timely based on tolling of the statute of repose. Defendants' reliance on *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013), is also misplaced. In *IndyMac*, the Court of Appeals addressed the applicability of *American Pipe* tolling to the statute of repose under §13 of the Securities Act. *Id.* at 100. The *IndyMac* court did not consider the issue before the Court in this case – what constitutes a "violation" under §1658(b)(2). Furthermore, as a §11 and §12 case, the *IndyMac* analysis was tethered to false and misleading statements contained within three registration statements and the related prospectuses and prospectus supplements. *Id.* at 100. Accordingly, the court did not address or analyze the application of a statute of repose to an ongoing and continuous scheme to defraud under the Exchange Act. Indeed, Securities Act cases are inapposite as they arise out of public securities offerings and involve misrepresentations that occur at one discrete point in time. *See Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 444 (S.D.N.Y. 2008). As a result, the basic nature of a Securities Act case does not involve continuing violations spanning several years. Thus, application of the *IndyMac* holding to the present case is off-base.

Finally, Defendants' comparison to two district court decisions does not bolster their argument as neither case discusses the Supreme Court's 2014 and 2017 instruction that statutes of repose begin from the last culpable act or omission of the defendant.  *See Freihofer v. Vermont Country Foods, Inc.*, No. 2:17-cv-149, 2019 WL 2995949, at *3 (D. Vt. July 9, 2019); *see also Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 804 (S.D.N.Y. 2015).  Additionally, neither opinion controls or binds the Court's decision here.  *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987).  Furthermore, Plaintiff respectfully disagrees with *Kuwait*.  Like Defendants, the court in *Kuwait* focused on the tolling of the statute of repose by way of the continuing violations doctrine.  128 F. Supp. 3d at 807.  But again, tolling or the equitable considerations discussed in *IndyMac* with respect to the statute of repose is not the issue here.  Instead, the issue is how to measure the commencement of the statute of repose for Defendants' alleged ongoing fraudulent scheme.  According to district court opinions issued in this Circuit discussed *supra* pp. 6-8, the statute of repose in cases like this one begins on the date of the defendant's last alleged misrepresentation or omission.

Plaintiff's interpretation of §1658(b)(2) is consistent with the majority of the decisions in this Circuit and two Supreme Court opinions that instruct that the statute of repose runs from the date of a defendant's last alleged misrepresentation or omission.  As the period of repose in this case did not begin until, at the earliest, November 9, 2016, and Plaintiff filed its suit on February 14, 2020, its claims are not time-barred by 28 U.S.C. §1658(b)(2)'s five-year statute of repose.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' motion to dismiss.

DATED: July 31, 2020

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK W. DANIELS
LUKE O. BROOKS
MATTHEW I. ALPERT
ANGEL P. LAU
ERIKA OLIVER
TING H. LIU

s/ LUKE O. BROOKS
LUKE O. BROOKS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
patrickd@rgrdalaw.com
lukeb@rgrdlaw.com
malpert@rgrdlaw.com
alau@rgrdlaw.com
eoliver@rgrdlaw.com
tliu@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on July 31, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      s/ LUKE O. BROOKS
      LUKE O. BROOKS

      ROBBINS GELLER RUDMAN
           & DOWD LLP
      655 West Broadway, Suite 1900
      San Diego, CA  92101-8498
      Telephone:  619/231-1058
      619/231-7423 (fax)

      E-mail:  lukeb@rgrdlaw.com

# Mailing Information for a Case 1:20-cv-01342-JPO Abu Dhabi Investment Authority v. Mylan N.V. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Matthew I. Alpert**
  MAlpert@rgrdlaw.com,e_file_sd@rgrdlaw.com,MAlpert@ecf.courtdrive.com

- **Luke Orion Brooks**
  lukeb@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Angel P. Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com,alau@ecf.courtdrive.com

- **Rory Ann Leraris**
  rleraris@cravath.com,mao@cravath.com,nbaker@cravath.com,gcheyne@cravath.com

- **Ting Liu**
  tliu@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David R Marriott**
  dmarriott@cravath.com,mao@cravath.com

- **Erika Limpin Oliver**
  eoliver@rgrdlaw.com

- **Kevin J. Orsini**
  korsini@cravath.com,mao@cravath.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`