**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ABU DHABI INVESTMENT AUTHORITY,

Plaintiff,

v.

MYLAN N.V. and MYLAN INC.,

Defendants.

No. 1:20-cv-01342 (JPO)

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants*

August 28, 2020

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... i

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. PLAINTIFF SEEKS IMPERMISSIBLY TO TOLL THE STATUTE OF REPOSE .......... 2

II. PLAINTIFF MISCONSTRUES THE ALLEGED "VIOLATION" FOR PURPOSES OF THE STATUTE OF REPOSE .......... 4

III. PLAINTIFF'S CASES ARE INAPPOSITE OR EASILY DISTINGUISHED .......... 7

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Beacon Assocs. Litig.*,
282 F.R.D. 315 (S.D.N.Y. 2012) ....................................................9

*Borden Inc. v. Spoor Behrins Campbell & Young*,
778 F. Supp. 695 (S.D.N.Y. 1991) ....................................................9

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*,
137 S. Ct. 2042 (2017)....................................................3, 7, 8

*Colbert v. Rio Tinto PLC*,
392 F. Supp. 3d 329 (S.D.N.Y. 2019)....................................................5, 6

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014)....................................................3, 7, 8

*In re Dynex Capital, Inc. Sec. Litig.*,
No. 05 Civ. 1897 (HB), 2006 WL 314524 (S.D.N.Y. Feb. 10, 2006)....................................................9

*In re Exxon Mobil Corp. Secs. Litig.*,
500 F.3d 189 (3d Cir. 2007)....................................................3, 5

*Fogel v. Wal-Mart de Mexico SAB de CV*,
No. 13 Civ. 2282, 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) ....................................................6

*Freihofer v. Vt. Country Foods, Inc.*,
No. 2:17-cv-149, 2019 WL 2995949 (D. Vt. July 9, 2019)....................................................3, 6, 10

*Howe v. Shchekin*,
238 F. Supp. 3d 1046 (N.D. Ill. 2017) ....................................................10

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*,
924 F. Supp. 2d 528 (S.D.N.Y. 2013)....................................................9

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
128 F. Supp. 3d 792 (S.D.N.Y. 2015).................................................... passim

*Marini v. Adamo*,
995 F. Supp. 2d 155 (E.D.N.Y. 2014) ....................................................3, 5, 9

*McCann v. Hy-Vee, Inc.*,
663 F.3d 926 (7th Cir. 2011) ....................................................5

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010)....................2

*P. Stolz Family P'ship L.P. v. Daum*,
355 F.3d 92 (2d Cir. 2004)....................3

*Plymouth Cty. Ret. Ass'n v. Schroeder*,
576 F. Supp. 2d 360 (E.D.N.Y. 2008)....................3, 9

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013)....................2, 6

*SRM Global Master Fund Ltd. P'ship v. Bear Stearns Co. LLC*,
829 F.3d 173 (2d Cir. 2016)....................3, 4

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
No. 05 Civ. 1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005)....................9

**Statutes & Rules**

28 U.S.C. § 1658(b)(2) .................... passim

## PRELIMINARY STATEMENT

Plaintiff cannot save its allegations of fraudulent statements and omissions made prior to the statute of repose cutoff—February 14, 2015—by pointing to a supposed scheme of continuing misstatements and omissions that it alleges lasted beyond February 14, 2015. If it could, then a securities fraud plaintiff could simply make sure to include an allegedly fraudulent statement from after the repose cutoff and successfully pull in years' worth of otherwise time-barred claims. This is precisely the outcome statutes of repose, including the Exchange Act's statute of repose, are meant to prevent. Plaintiff's effort to avoid that statute of repose should be rejected.

As set forth in Defendants' opening brief, under the Exchange Act's statute of repose, claims brought under Section 10(b) and Rule 10b-5 may not rely on any alleged misstatements or omissions from more than five years before the relevant complaint. Thus, Plaintiff may not premise its claims on alleged misstatements or omissions made prior to February 14, 2015—five years before it filed the instant action (the "Repose Cutoff"). There is no exception to this rule, and certainly none that would save Plaintiff's pre-February 2015 allegations.

In its opposition, Plaintiff seeks to save its time-barred allegations by trying to disguise an argument for equitable tolling of a statute of repose—expressly barred in the Second Circuit—as one about the definition of a "violation" for the purposes of that statute of repose. Specifically, Plaintiff argues that in a securities fraud case, a "violation" is the last-in-time alleged misstatement or omission in a series, such that if any alleged misstatement or omission in that series post-dates the Repose Cutoff, all pre-Repose Cutoff alleged misstatements or omissions are saved. In so arguing, Plaintiff (i) seeks impermissibly to toll the statute of repose, (ii) misconstrues the alleged "violation" for purposes of the statute of repose and (iii) relies

almost entirely on mischaracterized Supreme Court cases and outdated precedent from courts in the Second Circuit. Accordingly, this Court should dismiss Plaintiff's claims to the extent that they are based on alleged misrepresentations or omissions made more than five years before Plaintiff's complaint was filed.

## ARGUMENT

### I. PLAINTIFF SEEKS IMPERMISSIBLY TO TOLL THE STATUTE OF REPOSE

As explained in Defendants' opening brief, Plaintiff's claims are governed by the five-year period defined in 28 U.S.C. § 1658(b)(2), which is regarded as a statute of repose and is not subject to equitable tolling. (Opening Br. at 6; *see also* Opp. Br. at 6.) Under that statute, a plaintiff is required to file its complaint "not later than . . . 5 years after [the alleged] violation." 28 U.S.C. § 1658(b)(2). Plaintiff pays lip service to this bar but then seeks to end-run it, arguing that Defendants engaged in an alleged fraudulent scheme that consisted of a "series of misstatements or omissions" that "beg[an] in 2012" and "continued until May 2019" and that therefore the statute of repose did not begin to run until the last of those alleged misrepresentations or omissions. (Opp. Br. at 8.)

However, the Exchange Act's statute of repose is an "unqualified bar" that "giv[es] defendants total repose after five years". *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010). Section 1658(b)(2) creates "a substantive right" for Defendants to be "free from liability" with respect to all alleged violations that occurred prior to February 14, 2015—five years before the Complaint was filed. *See Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) ("[S]tatutes of repose create a substantive right in those protected to be free from liability after a legislatively-determined period of time.") (internal

quotations and citations omitted); *SRM Global Master Fund Ltd. P'ship v. Bear Stearns Co. LLC*, 829 F.3d 173, 177 (2d Cir. 2016) (expressly extending *IndyMac* to Section 1658(b)(2)).[1]

Following *IndyMac* and *SRM*, courts in the Second Circuit have, in Exchange Act cases, unanimously rejected the "continuing violations doctrine", an equitable tolling doctrine based on the idea that "the alleged fraud scheme should be treated as a continuing violation, such that all statements or omissions that constitute part of the alleged fraudulent scheme are actionable as long as the statute of repose period encompasses the terminal date of the scheme". *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 806, 808 (S.D.N.Y. 2015) (noting that the "continuing violations doctrine has been recognized by courts as an equitable tolling doctrine") (citations omitted); *see also Marini v. Adamo*, 995 F. Supp. 2d 155, 183 (E.D.N.Y. 2014); *Freihofer v. Vt. Country Foods, Inc.*, No. 2:17-cv-149, 2019 WL 2995949, at *3 (D. Vt. July 9, 2019). Despite Plaintiff's claim that it is not making an equitable tolling argument, its reliance on cases like *Plymouth County* indicate otherwise. *See Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360, 376 (E.D.N.Y. 2008) ("[P]laintiff contends that because the defendants filed false and misleading financial statements . . . within the five-year statute of repose, all of its claims are timely. *Apparently, the plaintiff relies on a form of equitable tolling*

[1] Plaintiff's argument that calculating the statute of repose cutoff consistent with precedent would lead to an "anomalous outcome" (Opp. Br. at 8-9) is inconsistent with the premise that statutes of repose may not be equitably tolled and the very cases Plaintiff cites. Many of Plaintiff's cited cases explicitly recognize that statutes of repose "strike a stronger defendant-friendly balance" and are intended to "protect[] defendants from defending against stale claims". *In re Exxon Mobil Corp. Secs. Litig.*, 500 F.3d 189, 199-200 (3d Cir. 2007); *see also Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*, 137 S. Ct. 2042, 2049 (2017) ("[S]tatutes of repose are enacted to give more explicit and certain protection to defendants."); *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014) (same). Plaintiff points to Judge Calabresi's concurring opinion in *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004) to support the extension of liability when a defendant has "continued his wrongful conduct . . . beyond the time specified by the repose period" (Opp. Br. at 7, n.5), but his concurrence predates not only *Waldburger* and *ANZ*, discussed *infra*, which hold that a statute of repose may not be equitably tolled, but also *IndyMac* and *SRM*. Beyond the fact that statutes of repose reflect the legislative judgment that defendants should be free from liability after a period of time, Plaintiff's argument is hollow: the class action from which Plaintiff here has opted out includes the very same allegations that this Plaintiff has copy and pasted, so a plaintiff could have timely brought claims that now are barred.

*or continuing violation theory, without expressly saying so.*") (emphasis added) (cited in Opp. Br. at 6, 9). Like the plaintiff in *Plymouth County*, Plaintiff's position depends on a veiled version of the continuing violation doctrine, which is no longer viable in the context of the Exchange Act.

Plaintiff effectively ignores the Second Circuit's decisions in *SRM* and *IndyMac*. Plaintiff makes no attempt to distinguish *SRM* except to argue again that Plaintiff's argument is not dependent on equitable tolling (Opp. Br. at 9), which, as discussed above and in Defendants' opening brief, is wrong. Instead, Plaintiff attempts to distinguish *IndyMac* by arguing that "Securities Act cases are inapposite as they arise out of public securities offerings and involve misrepresentations that occur at one discrete point in time". (Opp. Br. at 9 (citing *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 444 (S.D.N.Y. 2008), which does not discuss statutes of repose).) As a threshold matter, Plaintiff's attempt to distinguish *IndyMac* undermines the crux of its own argument, which, as discussed further below, relies heavily on a Supreme Court case addressing *the Securities Act's* statute of repose. (*See* Opp. Br. at 5-6 (citing *ANZ* and cases "[c]onsistent with the Supreme Court's instruction").) Under Plaintiff's logic, *ANZ* would also be inapposite as a Securities Act case as it "ar[o]se out of public securities offerings and involve[d] misrepresentations that occur[ed] at one discrete point in time". Moreover, even if *IndyMac* were distinguishable, *SRM* explicitly holds that the Exchange Act statute of repose may not be equitably tolled. 829 F.3d at 177. Thus, Plaintiff's attempt to end-run the statute of repose falls flat.

## II. PLAINTIFF MISCONSTRUES THE ALLEGED "VIOLATION" FOR PURPOSES OF THE STATUTE OF REPOSE

Rather than acknowledge that it is seeking equitable tolling under a different name, Plaintiff contends that it is merely defining the alleged "violation" as the "date on which

the last alleged misrepresentation or omission was made". (*See* Opp. Br. at 1.)[2] Following *IndyMac* and *SRM*, the Exchange Act statute of repose begins to run on the date of *each* alleged misstatement, even when the alleged misrepresentations or omissions are similar or relate to one another. That means that even where, as here, a plaintiff alleges a series of fraudulent misrepresentations or omissions underlying an Exchange Act claim, those alleged misrepresentations or omissions that were made prior to the statute of repose cutoff cannot serve as a basis for liability. *See, e.g.*, *Marini*, 995 F. Supp. 2d at 183-84 ("agree[ing] with the persuasive analysis of a majority of district courts throughout the country that have rejected the continuing violations doctrine in this context" due to the "essential role of the statute of repose in limiting securities claims") (citation omitted).

Since *IndyMac*, courts in the Second Circuit consistently have used the date of each allegedly material misstatement or omission as the triggering date for purposes of calculating the statute of repose cutoff for a plaintiff's Exchange Act claim. *Kuwait Inv. Office*, 128 F. Supp. 3d at 807 ("[T]he statute of repose runs from the date of each relevant misstatement or omission . . . ."); *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 336 (S.D.N.Y. 2019) ("Courts in this district have . . . consistently stated that the five-year period begins to run from the time that the allegedly fraudulent misrepresentations were made.") (citing *Boudinot v. Shrader*, No. 09 Civ. 10163, 2012 WL 489216, at *4 (S.D.N.Y. Feb. 15, 2012)); *see also*

[2] Plaintiff misrepresents the holdings of the Third and Seventh Circuits on this issue. Plaintiff contends that in *In re Exxon Mobil Corp. Sec. Litig*., 500 F.3d 189 (3d Cir. 2007) and *McCann v. Hy-Vee, Inc.*, 663 F.3d 926 (7th Cir. 2011), the Third and Seventh Circuits have "concur[red] that the five-year period runs from the date of the *last* alleged securities violation". (Opp. Br. at 7 n.4 (emphasis added).) Those cases do no such thing. The Third Circuit in *In re Exxon Mobil* stated that the "repose period . . . begins to run on the date of the alleged misrepresentation", supporting the notion that the statute of repose begins to run on the date of *each* alleged misstatement or omission. 500 F.3d at 200. *McCann* also makes no mention of the "last" alleged misstatement, but rather holds that "violation" in section 1658(b) "does not require injury" and that the "violation [is] defined as . . . the misrepresentation". 663 F.3d at 932 ("The violation in this case, defined as it should be—as *the misrepresentation*—occurred in August 2002, more than five years before the suit was filed. The suit is therefore untimely.") (emphasis added).

*IndyMac*, 721 F.3d at 106 ("[A] statute of repose '*extinguishes* a plaintiff's cause of action after the passage of a fixed period of time, *usually measured from one of the defendant's acts*.'") (emphasis added) (citation omitted). The calculation is not complicated—the first step a court will take in determining the repose cutoff for Exchange Act cases is counting back five years from the date the complaint was filed. *See, e.g.*, *Fogel v. Wal-Mart de Mexico SAB de CV*, No. 13 Civ. 2282, 2017 WL 751155, at *9 (S.D.N.Y. Feb. 27, 2017) ("[T]he Court can easily conclude that all claims premised on alleged material misrepresentations made prior to [five years before the first complaint was filed] are untimely."); *Freihofer*, 2019 WL 2995949, at *3 ("Freihofer filed his Complaint in 2017, thus setting the repose period at 2012.").

Accordingly, since *IndyMac* and *SRM*, Second Circuit courts universally dismiss claims based on allegedly material misstatements or omissions made more than five years before the relevant complaint was filed, even when the alleged misrepresentations concern the same subject matter. *Kuwait Inv. Office*, 128 F. Supp. 3d at 806, 808 (concerning allegations that the defendants made "numerous misstatements [] and omissions" during the relevant period as part of a scheme of "continued" fraud spanning two years but still holding that "all Exchange Act claims based on misstatements and/or omissions prior to the repose date [five years before each complaint was filed] are dismissed as untimely under Section 1658(b)(2)"); *see also Colbert*, 392 F. Supp. 3d at 336 ("Plaintiff may only bring suit for alleged violations of the Exchange Act that occurred on or after . . . five years before bringing his complaint[].").

In fact, at least one court in this district has considered and rejected a plaintiff's attempt to reframe what constitutes a "violation" of the Exchange Act to avoid the statute of repose. In *Kuwait Investment Office*, the plaintiffs argued, as Plaintiff does here, that their claims were not time-barred because the relevant "violation" of the Exchange Act included a

series of alleged material misrepresentations or omissions that continued into the repose period. 128 F. Supp. 3d at 808. The court ruled that this framing was "unsupported by the plain language of the statute", which made clear that the statute of repose was triggered on the date of each alleged misstatement or omission, and that "the expansion of 'violation' to include a series of misstatements and omissions would almost certainly require the operation of equitable considerations—the kind foreclosed by the reasoning in *IndyMac* with respect to statutes of repose". *Id.*

## III. PLAINTIFF'S CASES ARE INAPPOSITE OR EASILY DISTINGUISHED

Plaintiff cites *CTS Corp. v. Waldburger* and *California Public Employees' Retirement System v. ANZ Securities, Inc.* for the proposition that the Repose Cutoff is calculated based on the "last" alleged material misstatement or omission in Plaintiff's complaint. (*See* Opp. Br. at 6-9.) But neither case addresses what constitutes a "violation" of the Exchange Act or is inconsistent with Defendants' arguments. To the contrary, both cases reaffirm that statutes of repose may not be equitably tolled. *ANZ*, 137 S. Ct. at 2051 ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from equitable powers of courts."); *Waldburger*, 573 U.S. at 10 ("[A] statute of repose is a judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'") (citation omitted).

Moreover, while both *Waldburger* and *ANZ* use the words the "last culpable act or omission", the cases do not support Plaintiff's interpretation. *ANZ*, like this case, was about the impermissibility of equitable tolling in the context of statutes of repose. In that case, "more than three years after the relevant transactions occurred", petitioner filed an opt-out suit from a class action and argued that the Securities Act's three-year limit on liability was subject to *American Pipe* tolling and therefore the "filing of an individual complaint more than three years after the

relevant securities offering" was permissible. *ANZ*, 137 S. Ct. at 2048. The Court held that the Securities Act's three-year limit on liability was a statute of repose and *American Pipe* tolling is an equitable tolling doctrine that "does not apply" to the Securities Act's statute of repose. *Id.* at 2052. Plaintiff seizes on the Court's statement that statutes of repose begin to run "on the date of the last culpable act or omission of the defendant". (Opp. Br. at 6 (citing *ANZ*, 137 S. Ct. at 2045).) But this statement was not the subject of discussion or analysis, and in fact had no bearing on the outcome of that case; *ANZ* involved multiple securities offerings that all were untimely, and the Court did not instruct that the statute of repose begins to run on the date of the *last* securities offering at issue. *See ANZ*, 137 S. Ct. at 2045.

Similarly, in *Waldburger*, the Court considered whether a state statute of repose was preempted by the Comprehensive Environmental Response, Compensation and Liabilities Act of 1980 ("CERCLA"). *Waldburger*, 573 U.S. at 4. There, respondents argued that CERCLA preempted a North Carolina statute that "prevents subjecting a defendant to a tort suit brought more than 10 years after *the last culpable act of the defendant*". *Id.* at 6 (emphasis added). The Court held that respondents' suit was untimely because the relevant state statute was a statute of repose and thus not preempted by CERCLA. *See id.* at 19. The Court's use of the "last culpable act" language in *Waldburger* was grounded in statutory language that is not present in 28 U.S.C. § 1658(b)(2), and the Court did not hold that the "last culpable act" language expands the definition of what constitutes a violation of the Exchange Act to include a series of misstatements. As both *ANZ* and *Waldburger* demonstrate, determining what constitutes the "last culpable act or omission" is dependent on the language of the relevant statute of repose. The Exchange Act statute of repose states that an action must be brought "not later than . . . 5 years after such violation". Nowhere in the statute does it mention the *last*

violation, or the final violation in a series of violations. *See Kuwait Inv. Office*, 128 F. Supp. 3d at 808 n.30 ("The court declined to [hold that the statute of repose did not begin to run until the last date] with respect to Section 10(b) claims . . . because unlike Section 20A, which indicates that a violation can include multiple transactions, a violation of Section 10(b) and Rule 10b-5 occurs at each transaction for the purpose of calculating the repose date.") (analyzing *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 342 (S.D.N.Y. 2014)).

In addition to *Waldburger* and *ANZ*, Plaintiff cites a handful of cases from district courts in the Second Circuit which, prior to *IndyMac*, were amenable to Plaintiff's continuing violation argument. As Defendants already explained in their opening brief (Opening Br. at 8 & n.12), all of the cases that Plaintiff cites for the proposition that "the lion's share of district courts in this Circuit to consider the issue . . . have similarly held that the five-year period begins to run on the date of the 'last alleged misrepresentation or omission'" (Opp. Br. at 6-7) predate *SRM* and *IndyMac* and thus represent an outdated view of the law.[3] Plaintiff cites no post-*IndyMac* case in this Circuit endorsing a "continuing violations" theory, and Defendants are aware of none. To the contrary, district courts in the Second Circuit have unanimously rejected the continuing violations doctrine in this context. *See, e.g.*, *Kuwait Inv. Office*, 128 F. Supp. 3d at 807-08 ("[A]pplication of the continuing violations doctrine . . . is inconsistent with the substantive right to repose after five years granted by Section 1658(b)") (citations omitted); *Marini*, 995 F. Supp. 2d at 183 (noting that the Supreme Court has ruled that statutes of repose

[3] *See Intesa Sanpaolo, S.p.A. v. Credit Agricole Corp. & Inv. Bank*, 924 F. Supp. 2d 528 (S.D.N.Y. 2013); *In re Beacon Assocs. Litig.*, 282 F.R.D. 315 (S.D.N.Y. 2012); *Plymouth Cty. Ret. Ass'n v. Schroeder*, 576 F. Supp. 2d 360 (E.D.N.Y. 2008); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897 (HB), 2006 WL 314524, at *5 (S.D.N.Y. Feb. 10, 2006); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005); *Borden Inc. v. Spoor Behrins Campbell & Young*, 778 F. Supp. 695, 699 (S.D.N.Y. 1991). *But see Intesa Sanpaolo, S.p.A.*, 924 F. Supp. at 537 n.7 (citing cases that calculated the statute of repose cutoff based on the filing of a complaint and/or confirmed that "the clock begins ticking on 1658(b)'s five-year deadline on the date of the alleged misrepresentation or omission").

are "an unqualified bar on 10(b) claims" and declining to apply the continuing violations doctrine); *Freihofer*, 2019 WL 2995949, at *3-4 (analyzing recent authority within the Second Circuit, including cases Plaintiff relies on, and rejecting the continuing violations doctrine in an Exchange Act case);[4] *accord Howe v. Shchekin*, 238 F. Supp. 3d 1046, 1050 (N.D. Ill. 2017) (rejecting the continuing violations argument to save certain untimely alleged material misstatements because "to permit the repose period to run only from the date of the last misrepresentation in a series of misrepresentations would read into the statute a form of equitable tolling that preserves earlier misrepresentations") (citations omitted). This Court should adopt the commonsense interpretation of Section 1658(b)(2) shared by all other courts in this district following the Second Circuit's decisions in *SRM* and *IndyMac*.

**CONCLUSION**

For the reasons set above and in the opening brief, this Court should dismiss Plaintiff's claims to the extent they rely on allegedly false and misleading statements or omissions made prior to February 14, 2015.

[4] Plaintiff attempts to distinguish *Freihofer* by arguing that it does not "discuss[] the Supreme Court's 2014 and 2017 instruction" in *Waldburger* and *ANZ* that "statutes of repose begin from the last culpable act or omission of the defendant" and the opinion does not "control[] or bind[] the Court's decision here". (Opp. Br. at 10.) However, the court in *Freihofer* cited both *Waldburger* and *ANZ* for the proposition that statutes of repose may not be equitably tolled, and apparently concluded that neither opinion required the court to toll the Exchange Act statute of repose. *See Freihofer*, 2019 WL 2995949, at *3-4. Moreover, the court there carefully analyzed the trend of decisions from courts in the Second Circuit (with explicit reference to the S.D.N.Y. and the E.D.N.Y.) rejecting the continuing violations in the same context before this Court. *Id.* at *3-4.

August 28, 2020

Respectfully submitted,


CRAVATH, SWAINE & MOORE LLP,

by

              */s/ David R. Marriott*
David R. Marriott
Kevin J. Orsini
Rory A. Leraris
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
dmarriott@cravath.com
korsini@cravath.com
rleraris@cravath.com

*Attorneys for Defendants*