UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――――――
ABU DHABI INVESTMENT
AUTHORITY,
                            Plaintiff,         20-CV-1342 (JPO)

              -v-                               OPINION AND ORDER

MYLAN N.V. and MYLAN INC.,
                            Defendants.
―――――――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

Plaintiff Abu Dhabi Investment Authority filed this suit against Defendants Mylan N.V. and Mylan, Inc. (collectively, "Mylan"), alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  (*See* Dkt. No. 1 ("Compl.").)  Mylan moves to dismiss the complaint to the extent that Plaintiff's claims are based on allegedly false and misleading statements made before February 14, 2015, and thus barred by the Exchange Act's statute of repose.  (Dkt. No. 24.)  For the reasons that follow, Mylan's motion is granted.

**I.     Background**

The following facts are taken from the complaint and are presumed true for the purposes of this motion.

Mylan, a pharmaceutical company, develops, licenses, manufactures, markets, and distributes products that include the EpiPen Auto-Injector® and the EpiPen Jr Auto-Injector® (collectively, the "EpiPen"), as well as a host of generic drugs.  (Compl. ¶ 2.)  Mylan knowingly misclassified the EpiPen as a generic drug to overcharge Medicaid (Compl. ¶¶ 38–69, 78–82), engaged in anticompetitive conduct to inflate EpiPen's price (Compl. ¶¶ 97–113), and joined anticompetitive agreements to fix the prices of its generic drugs (Compl. ¶¶ 114–411).  In doing

so, Mylan made a series of false or misleading statements in filings with the U.S. Securities and Exchange Commission, press releases, and other public documents. (Compl. ¶¶ 412–534.) These statements ranged from February 21, 2012 to May 7, 2019. (Compl. ¶¶ 412–18, 532–534.)

Plaintiff, which owned Mylan securities and was damaged by Mylan's actions, filed the present suit on February 14, 2020. (Dkt. No. 1; Compl. ¶ 35.) On June 17, 2020, this Court ordered that the Court's prior opinions in the related class action filed in 2016 (Case Number 16 Civ. 7926) would apply in this action with equal force, with the exception that the order did not pertain to claims dismissed as barred by the statute of repose. (Dkt. No. 23.) Shortly thereafter, Mylan moved to dismiss the complaint to the extent the allegations are based on false and misleading statements before February 14, 2015. (Dkt No. 24.)

## II.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

### III. Discussion

At core, the parties dispute the correct framing of this case. The Exchange Act provides that

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of—
> **(1)** 2 years after the discovery of the facts constituting the violation; or
> **(2)** 5 years after such violation.

28 U.S.C. § 1658(b). Mylan argues that the Exchange Act's statute of repose in 28 U.S.C. § 1658(b)(2) cannot be tolled. Nor, Mylan maintains, is it subject to the continuing violation doctrine, pursuant to which the tolling period for a series of violations begins at last violation. This means, Mylan concludes, that Plaintiff's claims based on statements made before February 14, 2015 are barred by the statute of repose. Plaintiff, on the other hand, claims this case is about what constitutes a "violation" under 28 U.S.C. § 1658(b)(2), and that "the weight of authority in this Circuit holds" that the violation triggering the repose period is a defendant's *last* misrepresentation or omission. (Dkt. No. 34 at 5–6.) Since Mylan's last alleged violation was in 2019, Plaintiff argues that all of its claims are timely.

Plaintiff primarily relies on *CTS Corp. v. Waldburger*, 573 U.S. 1 (2014), and *California Pub. Emps' Ret. Sys. v. ANZ Secs., Inc.*, 137 S. Ct. 2042 (2017), in particular the Supreme Court's statement that statutes of repose "begin to run on the 'the date of the last culpable act or omission of the defendant.'" *Id*. at 2049 (citing *Waldburger*, 573 U.S. at 9). Plaintiff also cites several district court opinions in this Circuit which, it argues, follow this interpretation. (Dkt No. 34 at 6–7.)

3

But *ANZ* and *Waldburger*, Mylan argues, do not stand for the proposition Plaintiff claims they do. (Dkt. No. 38 at 7–8.) In *Waldburger*, the Court weighed whether a federal statute preempted North Carolina's statute of repose, which holds that "no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action." 573 U.S. at 6 (citing N.C. Gen. Stat. Ann. § 1—52(16)). The Court's "last culpable act" language forming the core of Plaintiff's argument was rooted in the North Carolina statute. 573 U.S. at 6.

In *ANZ*, the Court quoted *Waldburger* when it used such language again in assessing a statute of repose in the Securities Act. 137 S. Ct. at 2045 ("[S]tatutes of repose begin to run on 'the date of the last culpable act or omission of the defendant.'" (quoting *Waldburger*, 573 U.S. at 6)). The relevant statute of repose provided that "[i]n no event shall any such action be brought to enforce a liability created under [Section 11 of the Exchange Act] more than three years after the security was bona fide offered to the public . . . ." 15 U.S.C. § 77m. The *ANZ* Court afforded the "last culpable act" language no analysis, and it had no bearing on the case, as all of the securities offerings at issue were outside the statute of repose. 137 S. Ct. at 2047–48.

Rather than supporting Plaintiff's theory, *ANZ* and *Waldburger*, taken together, instead suggest that the specific language of a statute of repose — the North Carolina statute or the Securities Act, in those cases — matters for determining the relevant "last culpable act or omission." In neither case did the Court address whether the "last culpable act" should be treated as a continuing violation theory, as the behavior at issue comprised discrete acts. In *Waldburger*, the relevant "last culpable act" was a tortfeasor's last act or omission, 573 U.S. at 6; in *ANZ*, it was a public security offering, 137 S. Ct. at 2049. Here, the relevant language is "5 years after [a] violation" of the Exchange Act. 28 U.S.C. § 1658(b)(2). There is no indication in

4

the statutory language that Congress intended the statute of repose to run from the *last* violation, and this Court declines to read such meaning otherwise absent countervailing authority.

This conclusion is particularly warranted because both *ANZ* and *Waldburger* confirm the Court's strong caution regarding equitable tolling of statutes of repose. *ANZ*, 137 S. Ct. at 2051 ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from equitable powers of courts."); *Waldburger*, 573 U.S. at 10 ("[A] statute of repose is a judgment that defendants should 'be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'") (citation omitted).

Without *ANZ and Waldburger*, Plaintiff has little upon which to stand. All of the Circuit authority cited by Plaintiff predates two key Second Circuit decisions. In *Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, the Second Circuit held the Securities Act's statute of repose may not be equitably tolled, 721 F.3d 95, 112–113 (2d Cir. 2013), and it extended such holding to the Exchange Act in *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d. Cir. 2016). Plaintiff's claim, Mylan argues, is in reality one for equitable tolling that must fall under *IndyMac* and *SRM*.

In *Kuwait Inv. Office v. American Intern. Group, Inc.*, the court considered the very framing Plaintiff poses: that the relevant question is what constitutes a "violation" under the Exchange Act. 128 F. Supp. 3d 792, 807 (S.D.N.Y. 2015). The *Kuwait* court held that, "especially" after *IndyMac*, "application of the continuing violations doctrine to delay the commencement of the statute of repose in connection with independently actionable statements and omissions is inconsistent with the substantive right to repose after five years granted by Section 1658(b)." *Id*. (citation omitted). Reading "violation" to encompass a series of a

misstatements and omissions is unsupported by the Exchange Act's plain language, particularly because such interpretation would "almost certainly require the operation of equitable considerations" — considerations prohibited with regards to statutes of repose. *Id.* at 808. The *Kuwait* court's analysis is correct, and directly on point here: Plaintiff may not reframe this case to avoid the "unqualified bar" of the Exchange Act's statute of repose. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010).

Because they are barred by the statute of repose, any claims based on misstatements or omissions before February 14, 2015 are dismissed.

**IV.   Conclusion**

For the foregoing reasons, Mylan's motion to dismiss in part is GRANTED.

The Clerk is Court is respectfully directed to close the motion at Docket Number 24.

SO ORDERED.

Dated: February 10, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge